Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the order, the Full Commission AFFIRMS and ADOPTS the Decision and Order of the Deputy Commissioner, except as modified by deleting the nickname of inmate Franklin Douglas.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner and in the executed Pre-Trial agreement submitted on August 16, 1994 as
STIPULATIONS
1. On July 15, 1991, Plaintiff was an inmate at Cabarrus County Correctional Center, a facility of the North Carolina Department of Corrections located in Cabarrus County.
2. On July 15, 1991, Plaintiff was assaulted by another inmate named Franklin Douglas. Mr. Douglas was punished within the prison system for that assault.
3. As a result of that assault, Plaintiff sustained fractures of his right and left mandibles, the left zygomatic process and the left ascending ramus.
4. Plaintiff filed a tort claim affidavit on 27 May 1992.
5. Defendant provided or paid for plaintiff's medical care during the period of his incarceration in the North Carolina Department of Corrections pursuant to G.S. § 148-19 and § 148-22.2.
6. All documents produced by the parties during discovery are genuine and authentic.
7. Thirty-one pages of medical records, consisting of six pages from Cabarrus Memorial Hospital, nine pages from the Carolinas Medical Center, thirteen pages from McCain Correctional Hospital, two pages from Dr. Andrew Walker, and one page from Dale A. Childers, D.D.S. are received into evidence.
8. Thirteen pages labeled "State of North Carolina Department of Correction Division of Prisons" containing Standard Operating Procedures and Post Orders for correctional officers assigned to the Cabarrus Correctional Center are received into evidence.
9. Six pages titled Custody and Security from the North Carolina Administrative Code are received into evidence.
10. Two pages containing plaintiff's Department of Correction prison record certified by Hazel Keith on March 3, 1994 are received into evidence.
11. One page containing six photographs of plaintiff taken in a hospital on July 17, 1991 is received into evidence.
********
Based upon all of the competent, credible evidence of record the Full Commission adopts the findings of fact of the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. The Cabarrus County Correctional Center is a minimum-security facility of the North Carolina Department of Corrections located in Cabarrus County. The Cabarrus Correctional Center is a complex consisting of six buildings enclosed by a fence. The prison yard is an area enclosed by the fence between and around the buildings. The Cabarrus Correctional Center does not have any towers from which guards can observe the yard area. A visitation building was being constructed at the time of the assault. The prison fence divided this building from the prison yard.
2. On July 15, 1991, at roughly 8:35 p.m., plaintiff was assaulted by another inmate named Franklin Douglas while plaintiff raked gravel in the prison yard between two buildings. Plaintiff was struck in the head and face numerous times with a metal rod. As a result of the assault, plaintiff sustained fractures of his right and left mandibles, the left zygomatic process and the left ascending ramus.
3. Franklin Douglas' incarceration at the Cabarrus Correctional Center resulted from a conviction for robbery with a dangerous weapon on January 22, 1980 for which he received a 15-30 year sentence. At the Cabarrus Correctional Center, Douglas participated in the horticulture program. As part of this program, Douglas often left the prison grounds with other prisoners and guards to work.
4. The Cabarrus County Center staff responsible for overall supervision of the facility and the implementation of the Standard Operating Procedures and Post Orders for correctional officers assigned to the facility on the date of the incident were: A.J. Threatt, Superintendent and K.A. Hinson, Assistant Superintendent. The Cabarrus County Center staff responsible for the supervision of the prison yard area on the date of the incident were: Sergeant T.E. Foster, Officer in Charge, 2nd shift on the day of the incident; M. Boger, Post #2 (yard) Officer, 2nd shift on the day of the incident; Sergeant D. Zado, Officer in Charge, 1st shift on the day of the incident; and M. Brown, Post #2 (yard) Officer, 1st shift on the day of the incident. The number of officers on staff at the Cabarrus County Center is based upon appropriations made by the North Carolina State legislature in its biennial budget.
5. In addition to the yard officers and their supervisors, there are 4 other officers on duty per shift: 3 dormitory officers and 1 transfer officer. If the yard officer is in need of a break at any time during his shift, an on-duty dormitory officer temporarily takes his post.
6. Prior to the July 15, 1991 assault, neither the plaintiff nor anyone else had advised any officer, employee, involuntary servant, or agent of the state of any threat or danger to plaintiff from Douglas or any other inmate at the Center. Plaintiff had made no request for protective custody.
7. It is the duty of the Cabarrus County Center to exercise reasonable care in giving all prisoners who exit and then re-enter the prison compound a routine pat-down search upon re-entering the compound.
8. It is the duty of the Cabarrus County Center to exercise reasonable care in randomly searching prisoners and their lockers while the prisoners are on the prison grounds.
9. The duties of the yard officer are to exercise reasonable care in constantly moving around the prison yard to observe and inspect all areas for security, cleanliness, and safety. This officer also has the duty to exercise reasonable care in supervising all the prisoners who are in the yard.
10. No officer, employee, involuntary servant, or agent of the state breached the duty to exercise reasonable care in performing routine pat-down searches upon Franklin Douglas or other inmates re-entering the prison. A pat-down search was performed on Douglas and all inmates every time they re-entered the prison.
11. No officer, employee, involuntary servant, or agent of the state breached the duty to exercise reasonable care in performing random searches of Franklin Douglas and his locker and other inmates and their lockers while Douglas and other inmates were on the prison grounds. While at the Cabarrus County Center, Douglas' person and locker and other inmates' persons and lockers were randomly searched.
12. No officer, employee, involuntary servant, or agent of the state breached the duty to exercise reasonable care in constantly moving around the prison yard to observe and inspect all areas for security, cleanliness, and safety.
13. No officer, employee, involuntary servant, or agent of the state breached the duty to exercise reasonable care in supervising all the prisoners who were in the yard at, and prior to, the July 15, 1991 assault on plaintiff. At the time of the assault, Cabarrus County Center personnel were patrolling the prison yard area.
14. Although plaintiff was injured by the assault committed by Franklin Douglas, there is insufficient evidence of record from which to determine by its greater weight that the assault was proximately caused by a breach of duty by any officer, employee, involuntary servant, or agent of the state.
********
Based upon the foregoing findings of fact and conclusions of law the Full Commission concludes as follows:
CONCLUSION OF LAW
There was no negligence on the part of any named officer, employee, involuntary servant, or agent of the state while acting within the scope of his or her office, employment, service, agency, or authority which proximately caused plaintiff an injury, and plaintiff is entitled to no damages. G.S. § 143-291, et. seq.
*********
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following
ORDER
1. Under the law, plaintiff's claim must be, and the same is, hereby DENIED.
2. Each side shall pay its own costs. Plaintiff shall pay for the cost of Ms. Bates' deposition.
 S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ COY M. VANCE COMMISSIONER
S/ __________________ WILLIAM BOST DEPUTY COMMISSIONER
BSB:md